UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ELWOOD PATERSON,

                    Plaintiff,

v.                                            9:06-CV-0211
                                            (NAM/GHL)

GLENN S. GOORD, Commissioner, DOCS;
DR. LESTER N. WRIGHT, Deputy Commissioner;
JOHN W. BURGE, Superintendent, Auburn C.F.;
DR. PANG L. KOOI, Physician, Auburn C.F.;
VIRGINIA ANDROSKO, Nurse, Auburn C.F.;
NURSE MORGAN, Auburn C.F.;
NURSE JANE DOE, RN #246, Auburn C.F.,

                    Defendants.
_____

APPEARANCES:

ELWOOD PATERSON, 349-07-05033
  Plaintiff, *Pro Se*
George Motchan Detention Center
09-09 Hazen Street
East Elmhurst, NY 11370

HON. ANDREW M. CUOMO                    MEGAN M. BROWN, ESQ.
Attorney General for the State of New York    Assistant Attorney General
  Counsel for Defendants
The Capitol
Albany, NY 12224

GEORGE H. LOWE, UNITED STATES MAGISTRATE JUDGE

## **REPORT-RECOMMENDATION**

      This *pro se* prisoner civil rights action, brought under 42 U.S.C. § 1983, has been referred

to me for Report and Recommendation by the Honorable Norman A. Mordue, Chief United

States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Local Rules

of Practice for this Court.  Generally, Elwood Paterson ("Plaintiff") alleges that, while he was

incarcerated at Auburn Correctional Facility ("Auburn C.F.") from approximately July 16, 2003,

until approximately September 22, 2003, seven employees of the New York State Department of

Correctional Services ("DOCS")–(1) Glenn S. Goord, DOCS Commisioner, (2) Dr. Lester N.

Wright, DOCS Deputy Commissioner, (3) John W. Burge, Auburn C.F. Superintendent, (4) Pang

L. Kooi, a physician at Auburn C.F., (5) Virginia Androsko, a nurse at Auburn C.F., (6) Nurse

Morgan at Auburn C.F., and (7) Nurse Jane Doe at Auburn C.F. ("Defendants")–violated his

rights under the Fifth, Eighth and/or Fourteenth Amendments when they (1) were deliberately

indifferent to his serious medical needs (specifically a basketball injury to his left pinky finger

involving a ruptured tendon), and (2) transferred him to another prison without first providing

him medical treatment.  (*See generally* Dkt. No. 11, ¶¶ 5-17 [Plf.'s Am. Compl.].)

Currently pending is Defendants' motion to dismiss Plaintiff's Amended Complaint for

failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 25.)  Despite having been

granted two extensions of the deadline by which he had to respond to Defendants' motion,

Plaintiff failed to respond to that motion.  (Dkt. Nos. 28, 30.)  For the reasons stated below, I

recommend that Defendants' motion to dismiss be granted.

## I.     GENERAL LEGAL STANDARDS

### A.     Recently Clarified Legal Standard for Motions to Dismiss

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to

dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ.

P. 12(b)(6).  It has long been understood that a defendant may base such a motion on either or

both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Rule 8(a)(2);[1] or

(2) a challenge to the legal cognizability of the claim.[2]

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Such a statement must

"give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it

---

[1]      *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[2]      *See  Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . . In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6)].") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord, Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-02 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

rests."[3]  The purpose of this rule is to "facilitate a proper decision on the merits."[4]  A complaint that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."[5]

The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement.[6]  However, it is well established that even this liberal notice pleading standard "has its limits."[7]  As a result, several Supreme Court and Second Circuit decisions exist, holding that a pleading has failed to meet this liberal notice pleading standard.[8]

---

[3]     *Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 [1957]); *see also Swierkiewicz*, 534 U.S. at 512 (quoting *Conley*, 355 U.S. at 47); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley*, 355 U.S. at 47).

[4]     *See Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48).

[5]     *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion).  Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history.  *See, e.g., Photopaint Tech., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

[6]     *See, e.g., Swierkiewicz*, 534 U.S. at 513-514 (characterizing Fed. R. Civ. P. 8[a][2]'s pleading standard as "simplified").

[7]     2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).

[8]     *See, e.g., Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-74 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord, Dura Pharm.*, 125 S. Ct. at 1634-35,

Most notably, in the recent decision of *Bell Atl. Corp. v. Twombly*, the Supreme Court, in reversing an appellate decision holding that a complaint had stated a claim upon which relief could be granted, "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  127 S. Ct. 1955, 1968-69 (2007).[9]  Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the Rule 8 standard turns on the "plausibility" of an actionable claim.  *Id*. at 1965-74.  More specifically, the Court held that, for a plaintiff's complaint to state a claim, his "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true.  *Id*. at 1965 [citations omitted].  What this means, on a

---

*Christopher v. Harbury*, 536 U.S. 403, 416-22 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-35 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-09 (2d Cir. 2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*. *See*, *e.g.*, *Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2]).  Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2).  *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

[9]       The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint. . . .  *Conley*, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Twombly*, 127 S. Ct. at 1969.

practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]."  *Id.*; *see also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) ("[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly*] is . . . requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.") [emphasis in original].

        Having said that, it should be emphasized that, "[i]n reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[10]  Moreover, it should be noted that "[t]his standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*."[11]  In other words, while all pleadings are to be construed liberally, *pro se* civil rights pleadings are generally to be construed with an *extra* degree of liberality.  Indeed, generally "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."[12]  In addition, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend

_____

[10]        *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[11]        *Hernandez*, 18 F.3d at 136 [citation omitted]; *see also Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) [citation omitted].

[12]        *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[13]

However, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading.[14]  Moreover, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended."[15]  For example,

---

[13]     *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

[14]     *Cagle v. Perry*, 04-CV-1151, 2007 WL 3124806, at *6, n.45 (N.D.N.Y. Oct. 24, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Savage v. Brue*, 05-CV-0857, 2007 WL 3047110, at *5, n.35 (N.D.N.Y. Oct. 18, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Koehl v. Greene*, 06-CV-0478, 2007 WL 2846905, at *3, n.13 (N.D.N.Y. Sept. 26, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Muniz v. Goord*, 04-CV-0479, 2007 WL 2027912, at *2, n.14 (N.D.N.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *5, n.34 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *2, n.13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons*, 05-CV-0904, 2007 WL 37404, at *4, n.30 (N.D.N.Y. Jan. 4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Goros v. Cent. Office Review Comm.*, 03-CV-0407, 2006 WL 2794415, at *5, n.18 (N.D.N.Y. Sept., 26, 2006) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Williams v. Weaver*, 03-CV-0912, 2006 WL 2799417, at *4, n.16 (N.D.N.Y. Sept. 26, 2006)  (Kahn, J., adopting report-recommendation of Lowe, M.J.).

[15]     *Stinson v. Sheriff's Dep't of Sullivan County*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980); *accord*, *Standley v. Dennison*, 05-CV-1033, 2007 WL 2406909, at *6, n.27 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz*, 2007 WL 2027912, at *2 (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.*, 489 F. Supp.2d 305, 307 (W.D.N.Y. 2007); *Cosby v. City of White Plains*, 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb. 9, 2007); *Lopez v. Wright*, 05-CV-1568, 2007 WL 388919, at *3, n.11 (N.D.N.Y. Jan. 31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *2, n.13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins*, 2007 WL 37404, at *4 (Kahn, J., adopting report-recommendation of Lowe, M.J.).

an opportunity to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[16]

Finally, it should be remembered that Rule 12(b)(6) motions to dismiss are limited to the facts alleged in the complaint and must be converted into a Rule 56 motion for summary judgment if the court considers materials outside the pleadings.[17]  However, of course, the court may, without converting the motion to dismiss into a motion for summary judgment, consider (1) any documents relied on and/or referenced in the complaint (even if those documents are not attached to the complaint, if those documents are provided by defendants in their motion to dismiss),[18] and (2) any documents provided by the plaintiff in opposition to defendants' motion

---

[16]     *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted].

[17]     *See* Fed. R. Civ. P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.").

[18]     *See Chambers v. Time Warner*, 282 F.3d 147, 153 & n.3 (2d Cir. 2002) (district court's consideration of certain contracts attached to defendant's motion to dismiss is appropriate where plaintiff relied on documents in drafting his complaint) [collecting cases]; *Levy v. Southbrook Int'l Invest., Ltd.*, 263, F.3d 10, 13, n.3 (2d Cir. 2001) (noting that "it was appropriate for the district court to refer to documents attached to the motion to dismiss since the documents were referred to in the complaint") [citation omitted]; *San LeandroEmergency Med. Group v. Philip Morris Co., Inc.*, 75 F.3d 801, 808 (2d Cir. 1996) (a document that is "integral" to the complaint may be considered by the district court on a motion to dismiss "despite the fact that the complaint only contains limited quotations from that document") [collecting cases]; *Harsco Corp. v. Segui*, 91 F.3d 337, 341, n.1 (2d Cir. 1996) ("This letter, though cited to and described in the complaint, was not attached to the complaint.  We may nonetheless review the letter in its entirety [in deciding defendants' motion to dismiss].") [citation omitted]; *Cortec*

to dismiss, to the extent those documents are consistent with the allegations in the complaint.[19]

## II.     BACKGROUND

### A.      Allegations of Plaintiff's Amended Complaint

Liberally construed, Plaintiff's Amended Complaint sets forth the following factual

allegations against Defendants.

On or about July 16, 2003, while playing basketball at Auburn C.F., Plaintiff injured his

left pinky finger.  (Dkt. No. 11, ¶ 5 [Plf.'s Am. Compl.].)  He was immediately escorted to the

facility's medical clinic, where he was seen by a physician (identified by Plaintiff as "John Doe")

by means of a "telemed video system."  (*Id*.)  The physician stated that Plaintiff's finger appeared

to be only sprained despite its swollen appearance, and suggested that a nurse (identified by

Plaintiff as "Jane Doe") "buddy tape" the finger.  (*Id*. at ¶ 6.)

---

*Indus., Inc. v. Sum Holding LP*, 949 F.2d 42, 48 (2d Cir. 1991) ("When plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.");  *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., Inc.*, 936 F.2d 759, 762 (2d Cir. 1991) ("We . . . decline to close our eyes to the contents of the prospectus and to create a rule permitting a plaintiff to evade a properly argued motion to dismiss simply because plaintiff has chosen not to attach the prospectus to the complaint or to incorporate it by reference.") [citations omitted].

[19]      "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum."  *Gadson v. Goord*, 96 Civ. 7544, 1997 WL 714878, *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia*, *Gil v. Mooney*, 824 F.2d 192, 195 [2d Cir. 1987] [considering plaintiff's response affidavit on motion to dismiss]).  Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.'"  *Donhauser v. Goord*, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (considering factual allegations contained in plaintiff's opposition papers) (citations omitted), *vacated in part on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004).

The next day (July 17, 2003), an x-ray examination of Plaintiff's finger was conducted by medical personnel at Auburn C.F., including a radiologist identified by Plaintiff as Dr. Michael Maresca.  (*Id*. at ¶ 7.)  Two days later (on July 18, 2003), Dr. Maresca (and two other medical personnel) signed a medical report based on the x-rays.  (*Id*.)  The medical report indicated that the injury was "unremarkable."  (*Id*.)

After approximately ten days of complaining of pain in his finger, Plaintiff was again escorted to the facility's medical clinic, on or about July 29, 2003.  (*Id*. at ¶ 8.)  He was seen by a nurse, Defendant Androsko, who gave Plaintiff ibuprofen and made an appointment for him to see a physician in a few days.  (*Id*.)

Approximately eight days later (on or about August 6, 2003), Plaintiff was seen by a physician, Defendant Kooi.  (*Id*. at ¶ 9.)  Defendant Kooi told Plaintiff that his finger was only sprained, despite its discolored and swollen appearance.  (*Id*.)  Defendant Kooi then told Plaintiff that he would schedule Plaintiff for another examination in a few weeks.  (*Id*. at ¶ 10.)

During the following three days, Plaintiff continued to complain of pain, requesting daily sick-calls.  (*Id*.)  On or about August 11, 2003, he was again escorted to the facility's medical clinic.  (*Id*. at ¶ 11.)  He was again seen by Defendant Androsko, who "did absolutely nothing for the Plaintiff."  (*Id*.)

The next day (on or about August 12, 2003), after continued complaints of pain, Plaintiff was again escorted to the facility's medical clinic, where he was again seen by Defendant Androsko.  (*Id*. at ¶ 12.)  Plaintiff "demanded to see a physician, . . . [to] have his finger treated or fixed immediately[,] . . . and [to receive] medication for the pain and suffering."  (*Id*.)  Defendant Adrosko again "did absolutely nothing" except to inform Plaintiff that Defendant Kooi

10

would see him in six days, that is, on or about August 18, 2003.  (*Id*.)

On or about August 18, 2003, Plaintiff was again escorted to the facility's medical clinic, where he was seen by a nurse, Defendant Morgan.  (*Id*. at ¶ 13.)  Defendant Morgan informed Plaintiff that he was scheduled to be seen by Defendant Kooi soon.  (*Id*.)  Plaintiff stated that he was supposed to see Defendant Kooi, and he "adamantly requested" to see a physician or another medical staff member regarding his injured finger.  (*Id*.)  Defendant Morgan denied Plaintiff's request.  (*Id*.)

On or about September 8, 2003, after continued complaints of pain, Plaintiff was again seen by Defendant Androsko.  (*Id*. at ¶ 14.)  Defendant Androsko told Plaintiff that Defendant Kooi would not be seeing Plaintiff until September 15, 2003.  (*Id*.)

On or about September 15, 2003, the medical clinic at Auburn C.F. "refused to see the Plaintiff without reason."  (*Id*. at ¶ 15.)

On or about September 16, 2003, Plaintiff filed a formal complaint (No. Aub-40324) regarding the medical clinic's failure to properly treat his injured finger.  (*Id*. at ¶ 16.)

On or about September 22, Plaintiff was involuntarily transferred from Auburn C.F. to Clinton Correctional Facility.  (*Id*. at ¶ 17.)

Although Plaintiff's Amended Complaint asserts another 12 paragraphs of factual allegations against individuals regarding the inadequate medical care he received for his injured finger, none of those individuals are Defendants named in his Amended Complaint.  (*Id*. at ¶¶ 17-29.)  The only factual allegations contained in those 12 paragraphs that are relevant to Plaintiff's claims against the Defendants named in his Amended Complaint are the following three allegations: (1) on or about December 3, 2003, the injury to his finger was identified as a

"flexion," "a Bouteniere [sic] deformity,"[20] and a "rupture to the short exterior tendon"; (2) on or

about January 21, 2004, he was advised that he would need surgery to repair the injured pinky

finger," but then, on or about February 11, 2004, he was advised that surgery could not be

performed at that time until his injured finger straightened out; and (3) on or about February 1,

*2005*, he was advised that surgery could be performed but that it was not recommended since

"there was a chance that the finger could not ever be able to bend at Plaintiff's will again."  (*Id*. ¶¶

at 20-23, 27.)

   Finally, it is worth noting that Plaintiff's theory of liability rests on the following two

allegations: (1) Defendants Goord and Wright are liable because, as supervisors, they "knew or

should have known that Plaintiff was outright being denied proper medical care and/or

treatment"; and (2) Defendant Goord is liable also because he "approved or caused" each of the

prison transfers that Plaintiff experienced after his finger had been injured.  (*Id*. ¶ 30.)

   **B.    Legal Arguments Supporting Defendants' Motion to Dismiss**

   In their memorandum of law, Defendants argue that Plaintiff's claims should be

dismissed because (1) Plaintiff has failed to allege personal involvement against any of the

supervisory defendants; (2) Plaintiff has not plead and cannot prove an Eighth Amendment

violation against any of the defendants; (3) Defendants are entitled to qualified immunity; and (4)

Defendants are entitled to a protective order barring discovery.  (Dkt. No. 25, Part 1 [Defs.'

Mem. of Law].)  Plaintiff failed to issue a response to Defendants' Motion to Dismiss.

---

[20]    I believe the correct spelling of the word is "boutonnière," from the French word
for "buttonhole."

III.     ANALYSIS

A.     First Basis for Dismissal: Facial Merit of Defendants' Unopposed Motion

Defendants filed their motion to dismiss on March 22, 2007.  (Dkt. No. 25)   In light of

Plaintiff's special status as a *pro se* litigant, on May 9, 2007 and June 1, 2007, the Court twice

granted Plaintiff an extension of time by which to respond to Defendants' motion, first until June

11, 2007, and then until July 23, 2007.  (Dkt. Nos. 28, 30)  In addition, the Court specifically

advised Plaintiff that his failure to so respond would be deemed consent to the relief requested in

Defendants' motion.  (Dkt. No. 28 at 2.)  Still, Plaintiff did not respond to Defendants' motion to

dismiss.

"Where a properly filed motion is unopposed and the Court determines that the moving

party has met its burden to demonstrate entitlement to the relief requested therein, the non-

moving party's failure to file or serve any papers as required by this Rule shall be deemed as

consent to the granting or denial of the motion, as the case may be, unless good cause be shown."

N.D.N.Y. L.R. 7.1(b)(3).

Here, Defendants' motion to dismiss has been properly filed; Plaintiff has failed to

oppose it (despite being warned of the possible consequences of that failure); and Plaintiff has

failed to show good cause as to why his failure to oppose Defendants' motion should not be

deemed as "consent" to the granting of the motion.[21]  Therefore, the sole issue remaining before

_____

[21]     Indeed, I note that Plaintiff has not filed anything with the Court since May 17,
2007.  (Dkt. No. 29.)  This lack of filing activity is conspicuous considering that, on June 1,
2007, the Court sent to Plaintiff a blank motion for appointment of counsel form, in response to
his indicating that he wanted to be appointed counsel.  (Dkt. No. 30.)  Plaintiff's subsequent
silence leaves me no choice but to conclude that he has abandoned any opposition to Defendants'
motion to dismiss.

13

the Court is whether Defendants have met their "burden to demonstrate entitlement to the relief requested" in their motion.  N.D.N.Y. L.R. 7.1(b)(3).

As a practical matter, an inquiry into whether a movant has met its "burden to demonstrate entitlement" to dismissal under Local Rule 7.1(b)(3) is a more limited endeavor than a review of a contested motion to dismiss.[22]  Specifically, on an uncontested motion to dismiss, the movant's burden of persuasion is lightened such that, in order to succeed, his motion need only be "facially meritorious."[23]  A movant's burden in making legal arguments that are facially meritorious has appropriately been characterized as "modest."[24]  Here, after carefully reviewing

---

[22]     *See, e.g., Hernandez v. Nash*, 00-CV-1564, 2003 U.S. Dist. LEXIS 16258, at *7-8 (N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.) (before an unopposed motion to dismiss may be granted under Local Rule 7.1[b][3], "the court must review the motion to determine whether it is *facially meritorious*") [emphasis added; citations omitted]; *Race Safe Sys. v. Indy Racing League*, 251 F. Supp.2d 1106, 1109-10 (N.D.N.Y. 2003) (Munson, J.) (reviewing whether record contradicted defendant's arguments, and whether record supported plaintiff's claims, in deciding unopposed motion to dismiss, under Local Rule 7.1[b][3]); *see also Wilmer v. Torian*, 96-CV-1269, 1997 U.S. Dist. LEXIS 16345, at *2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M.J.) (applying prior version of Rule 7.1[b][3], but recommending dismissal because of plaintiff's failure to respond to motion to dismiss *and* the reasons set forth in defendants' motion papers), *adopted by* 1997 U.S. Dist. LEXIS 16340, at *2 (N.D.N.Y. Oct. 14, 1997) (Pooler, J.); *accord, Carter v. Superintendent Montello*, 95-CV-0989, 1996 U.S. Dist. LEXIS 15072, at *3 (N.D.N.Y. Aug. 27, 1996) (Hurd, M.J.), *adopted by* 983 F. Supp. 595 (N.D.N.Y. 1996) (Pooler, J.).

[23]     *See, e.g., Hernandez*, 2003 U.S. Dist. LEXIS 1625 at *8;  *accord, Topliff v. Wal-Mart Stores East LP*, 04-CV-0297, 2007 U.S. Dist. LEXIS 20533, at *28 & n.43 (N.D.N.Y. March 22, 2007) (Lowe, M.J.); *Hynes v. Kirkpatrick*, 05-CV-0380, 2007 U.S. Dist. LEXIS 24356, at *5-6 & n.2 (N.D.N.Y. March 21, 2007) (Lowe, M.J.); *Sledge v. Kooi*, 04-CV-1311, 2007 U.S. Dist. LEXIS 26583, at *28-29 & n.40 (N.D.N.Y. Feb. 12, 2007) (Lowe, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 22458 (N.D.N.Y. March 28, 2007) (McAvoy, J.); *Kele v. Pelkey*, 03-CV-0170, 2006 U.S. Dist. LEXIS 95065, at *5 & n.2 (N.D.N.Y. Dec. 19, 2006) (Lowe, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 4336 (N.D.N.Y. Jan. 22, 2007) (Kahn, J.).

[24]     *See, e.g., Ciaprazi v. Goord*, 02-CV0915, 2005 WL 3531464, at *8 (N.D.N.Y. Dec. 22, 2005) (Sharpe, J.; Peebles, M.J.) (characterizing defendants' threshold burden on a motion for summary judgment as "modest") [citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986)]; *accord, Saunders v. Ricks*, 03-CV-0598, 2006 WL 3051792, at *9 & n.60

14

Plaintiff's Amended Complaint, and the Memorandum of Law in support of Defendants' motion

to dismiss, I find that Defendants have met their lightened burden on their unopposed motion, for

the reasons stated in their Memorandum of Law.  (*Compare* Dkt. No. 11 [Plf.'s Am. Compl.]

*with* Dkt. No. 25, Part 2, at 2-9 [Defs.' Mem. of Law].)

For these reasons, I recommend that the Court grant Defendants' motion to dismiss.

Because adequate reason exists to grant Defendants' unopposed motion to dismiss, the Court

need proceed no further in its analysis of Plaintiff's Amended Complaint (except with regard to

his claims against the unnamed and unserved Nurse "Jane Doe, RN #246," discussed below in

Part III.C. of this Report-Recommendation).  However, in the interest of thoroughness, and

toward the end of describing an *alternative basis* for dismissal of Plaintiff's Amended Complaint,

I will subject Defendants' motion to dismiss to the more rigorous scrutiny appropriate on a

contested motion to dismiss.

### B.    Alternative Basis for Dismissal: Substantive Merit of Defendants' Motion

#### 1.    Failure by Plaintiff to Allege Facts Plausibly Suggesting the Personal Involvement of Any of the Supervisory Defendants

Defendants argue that Plaintiff has not alleged facts plausibly suggesting the personal

involvement of any of the three supervisory Defendants (Goord, Wright or Burge) in the

constitutional violations alleged in his Amended Complaint.  (Dkt. No. 25, Part 2, at 2-3 [Defs.'

Mem. of Law].)  I agree.

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a

_____

(N.D.N.Y. Oct. 18, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.), *Smith v. Woods*, 03-CV-0480, 2006 WL 1133247, at *17 & n.109 (N.D.N.Y. Apr. 24, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.).

prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.

1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 [2d Cir. 1991]).[25]  In order to

prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show

some tangible connection between the alleged unlawful conduct and the defendant.[26]  If the

defendant is a supervisory official, such as a DOCS Commissioner or correctional facility

superintendent, a mere "linkage" to the unlawful conduct through "the prison chain of command"

(i.e., under the doctrine of *respondeat superior*) is insufficient to show his or her personal

involvement in that unlawful conduct.[27]  In other words, supervisory officials may not be held

liable merely because they held a position of authority.[28]  Rather, supervisory personnel may be

considered "personally involved" only if they (1) directly participated in the violation,

(2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or

allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly

negligent in managing subordinates who caused the violation, or (5) exhibited deliberate

indifference to the rights of inmates by failing to act on information indicating that the violation

was occurring.[29]

---

[25]     *Accord*, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978); *Gill v. Mooney*, 824 F2d 192, 196 (2d Cir. 1987).

[26]     *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

[27]     *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

[28]     *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

[29]     *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (adding fifth prong); *Wright*, 21 F.3d at 501 (adding fifth prong); *Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir. 1986)

Here, Plaintiff asserts claims against three supervisory officials–Defendant Goord (the DOCS Commissioner), Defendant Wright (a DOCS Deputy Commissioner), and Defendant Burge (the Auburn C.F. Superintendent).  (Dkt. No. 11, ¶¶ 3, 4, 30 [Plf.'s Am. Compl.].) However, with regard to Defendant Burge, Plaintiff does not even conclusorily allege that he was personally involved in the alleged violation of his constitutional rights.  In fact, the only time Plaintiff even mentions Defendant Burge in his Amended Complaint is in the caption of the Amended Complaint, Paragraph 4 of the Amended Complaint, and Exhibit C to the Amended Complaint.  (Dkt. No. 11, Caption, ¶ 4 & Ex. C [Plf.'s Am. Compl.].)[30]  Clearly, Plaintiff's theory of liability against Defendant Burge hinges solely on Defendant Burge's position as the supervisor of Auburn C.F. during the time in question.  As explained above, such a supervisory position is not, in and of itself, sufficient to impose on Defendant Burge liability for the constitutional violations allegedly committed by various of his subordinates.

Moreover, with regard to Defendant Wright, Plaintiff alleges only that he "knew or should have known that Plaintiff was outright being denied proper medical care and/or treatment."  (Dkt. No. 11, ¶ 30 [Plf.'s Am. Compl.].)  Plaintiff's allegation is wholly conclusory. Plaintiff does not allege facts plausibly suggesting that Defendant Wright *directly participated* in the constitutional violations alleged.  Nor does he allege facts plausibly suggesting that Defendant Wright *failed to remedy* the constitutional violations alleged after learning of those

---

(setting forth four prongs).

[30]        I note that Exhibit C to Plaintiff's Amended Complaint does not even mention Defendant Burge by name but merely attaches a written decision by DOCS' Central Office Review Committee upholding the determination of "the Superintendent [of Auburn C.F.]" with regard to Plaintiff's grievance concerning his injured finger.  (Dkt. No. 11, Ex. C [Plf.'s Am. Compl.].)

violations through a report or appeal.  Nor does he allege facts plausibly suggesting that Defendant Wright created, or allowed to continue, *a policy or custom* under which the violations occurred.  Nor does he allege facts plausibly suggesting that Defendant Wright had been *grossly negligent* in managing subordinates who caused the violations.  Nor does he allege facts plausibly suggesting that Defendant Wright exhibited *deliberate indifference* to the rights of inmates by failing to act on information indicating that the violation was occurring.

Finally, with regard to Defendant Goord, Plaintiff alleges only that (1) he "knew or should have known that Plaintiff was outright being denied proper medical care and/or treatment," and (2) he "approved or caused" each of the prison transfers that Plaintiff experienced after his finger had been injured.  (Dkt. No. 11, ¶ 30 [Plf.'s Am. Compl.].)  The "knew or should have known" allegation against Defendant Goord suffers from the exact same defects as Plaintiff's "knew or should have known" allegation against Defendant Wright, described in the preceding paragraph.  The "approved or caused" allegation against Defendant Goord is so obviously without factual support that it rises to the level of frivolity.

For all of these reasons, I recommend that, in the alternative, the Court grant Defendants' motion to dismiss with regard to Plaintiff's claims against Defendants Goord, Wright and Burge.

>    **2.    Failure by Plaintiff to Allege Facts Plausibly Suggesting that Defendants Were Deliberately Indifferent to a Serious Medical Need**

Defendants argue that (1) Plaintiff's Fifth and Fourteenth Amendment claims are, in actuality, an Eighth Amendment claim, and (2) with regard to that Eighth Amendment claim, Plaintiff has failed to allege facts plausibly suggesting that Defendants were deliberately indifferent to any serious medical need experienced by Plaintiff.  (Dkt. No. 25, Part 2, at 3-5 &

n.1 [Defs.' Mem. of Law].)  Again, I agree.

Liberally construed, Plaintiff's asserted claims under the Fifth and Fourteenth Amendments arise out of his (1) being transferred from Auburn C.F. on or about September 22, 2003, before he received adequate medical care for his injured finger, and (2) being transferred "back and forth and across New York State," between approximately October 29, 2003, and approximately December 20, 2004, without being provided adequate medical care for his injured finger.  (Dkt. No. 11, ¶¶ 19-26, 32, 36 [Plf.'s Am. Compl.].)  It should be emphasized that Plaintiff does not even conclusorily allege that he was subjected to these transfers without being afforded procedural due process (under either the Fifth or Fourteenth Amendments), or that he was subjected to them as a form of retaliation for having engaged in some form of protected activity (under the First and Fourteenth Amendments).  Rather, he alleges that prison transfers so inconvenienced him as to cause him "pain and suffering," which (when coupled with the lack of adequate medical care he experienced) constituted "a gross deliberate indifference to Plaintiff's medical needs."  (*Id*. at ¶¶ 34, 36.)[31]

A prisoner's allegation of deliberate indifference to a serious medical need arises under the Eighth Amendment when (as here) the alleged deliberate indifference occurred while prisoner was incarcerated on a sentence of conviction, and under the Fifth Amendment when the alleged deliberate indifference occurred while prisoner was detained awaiting trial.  *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000).  Under either constitutional amendment, the legal standard (for

---

[31]     I note that the only factual allegation Plaintiff offers in support of this alleged pain and suffering is Plaintiff's allegation that, on or about September 21, 2004, during a prison transfer from Gouverneur Correctional Facility to Elmira Correctional Facility, his physician-prescribed finger splint was seized during a strip-frisk and subsequently lost or misplaced.  (*Id*. at ¶ 24.)

a deliberate indifference claim) is the same.  *Cuoco*, 222 F.3d at 106.

Generally, to state a claim for inadequate medical care, a plaintiff must allege facts plausibly suggesting two things: (1) that he had a sufficiently serious medical need; and (2) that the defendants were deliberately indifferent to that serious medical need.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

### a.      Whether Plaintiff Had a Sufficiently Serious Medical Need

I am extremely doubtful that Plaintiff has alleged facts plausibly suggesting a "sufficiently serious" medical need for Eighth Amendment purposes.  Such a serious medical need must be "a condition of urgency, one that may produce death, degeneration, or extreme pain."  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1996) [internal quotation marks and citation omitted].  Granted, Plaintiff alleges that he experienced "constant" and "severe" pain during the relevant time period.  (Dkt. No. 11, ¶¶ 8, 12 [Plf.'s Am. Compl., alleging that he complained of "constant pain" on or about July 29, 2003, and "severe pain" on or about August 12, 2003].)  However, a plaintiff's subjective complaints of pain do not, in and of themselves, constitute factual allegations plausibly suggesting the existence of a serious medical need.[32] (Again, the serious-medical-need standard is an objective one, not a subjective one.)  Moreover, Plaintiff alleges facts plausibly suggesting that the pain he experienced was ameliorated somewhat by pain medication.   (Dkt. No. 11, ¶ 8 [Plf.'s Am. Compl., alleging that he received ibuprofen on or about July 29, 2003].)  Finally, and most importantly, each of the four New York

---

[32]      *See Thomas v. Nassau County Corr. Ctr.*, 288 F. Supp.2d 333, 338 (E.D.N.Y. 2003) ("[S]ubjective complaints of pain are not sufficient to satisfy [the serious medical need] standard.") [citations omitted], *accord*, *Espinal v. Coughlin*, 98-CV-2579, 2002 WL 10450, at *3 (S.D.N.Y. Jan. 3, 2002).

State district courts in this Circuit have specifically held, as a matter of law, that a *broken* finger alone does not constitute a serious medical need.  *See, e.g., Magee v. Childs*, 04-CV-1089, 2006 U.S. Dist. LEXIS 14571, at *12-13 (N.D.N.Y. Feb. 27, 2006) (Treece, M.J.) ("[M]any courts have held that a broken finger does not constitute a serious injury . . . .") [citations omitted].[33]

If a *broken* finger does not constitute a serious medical need, it is difficult for me to imagine how an *unbroken* finger (such as Plaintiff's pinky finger, which allegedly suffered from a torn tendon) can constitute a serious medical need.  Indeed, this Court has specifically held, as a matter of law, that an unbroken finger does not constitute a serious medical need.  *See Harvey v. Goord*, 03-CV-0838, 2006 U.S. Dist. LEXIS 91561, at *16-20 (N.D.N.Y. Dec. 18, 2006) (Strom, J.) (dismissing prisoner's Eighth Amendment claim because his swollen but unbroken finger did not constitute a serious medical need).[34]

I note that Plaintiff has alleged facts plausibly suggesting that "there was a chance" that there would be some permanent injury to his pinky finger.  (Dkt. No. 11, ¶ 27 [Plf.'s Am.

---

[33]   *Accord*, *Gaines v. Okpok*, 03-CV-5095, 2006 U.S. Dist. LEXIS 42845, at *8, 12-14, 16-17 (E.D.N.Y. June 9, 2006) (dismissing prisoner's Eighth Amendment claim because his broken finger was not serious medical need); *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp.2d 303, 311 (S.D.N.Y. 2001) ("[C]ase law holds that the objective prong of the deliberate indifference test is not satisfied even where a finger is broken.") [citations omitted]; *Henderson v. Doe*, 98-CV-5011, 1999 U.S. Dist. LEXIS 8672, at *7 (S.D.N.Y. June 10, 1999) ("[C]onditions that have failed to meet [the 'sufficiently serious'] standard include . . . a broken finger.") [citations omitted]; *Rivera v. Johnson*, 95-CV-0845, 1996 U.S. Dist. LEXIS 14192, at *6-7 (W.D.N.Y. Sept. 25, 1996) ("A broken finger, without more, simply does not present a condition of urgency of the type that may produce death, degeneration or extreme pain which correspondingly merits constitutional protection."); *cf. Ruiz v. Homerighouse*, 01-CV-0266, 2003 U.S. Dist. LEXIS 24739, at *10 (W.D.N.Y. Feb. 13, 2003) (prisoner's fractured knuckle did not constitute serious medical need) [citation omitted].

[34]   *Accord, Wright v. Schelker*, 01-CV-2646, 2003 U.S. LEXIS 23134, at *14-15 (S.D.N.Y. Oct. 27, 2003) (dismissing prisoner's Eighth Amendment claim because his sprained swollen finger did not constitute a serious medical need) [citations omitted].

Compl., alleging that he was advised by a "Dr. B. Harley" on February 1, 2005, that "there was a chance that the finger could not ever be able to bend at Plaintiff's will again"].)  However, this factual allegation does not, by itself, elevate Plaintiff's injury to constitutional proportions.  *See Bonner v. New York City Police Dep't*, 99-CV-3207, 2000 U.S. Dist. LEXIS 11738, at *13 (S.D.N.Y. Aug. 17, 2000) (prisoner did not allege facts plausibly suggesting sufficiently serious medical need even though he alleged one of the fingers of his swollen hand "does not close") [citations omitted].

For these reasons, I find that Plaintiff has not alleged facts plausibly suggesting that, during the relevant time period, he suffered from a serious medical need.

### b.        Whether Defendants Were Deliberately Indifferent

In any event, even if I were to assume, for the sake of argument, that Plaintiff did suffer from such a serious medical need, I would find that he has not alleged facts plausibly suggesting that Defendants were *deliberately indifferent* to that need.

An official is "deliberately indifferent" to a serious medical need when he "'knows of and disregards an excessive risk to inmate health or safety.'"  *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 [1994]).  What this means is that "'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  *Johnson*, 412 F.3d at 403 [citing *Farmer*, 511 U.S. at 837].  Here, Plaintiff alleges that his injury was successfully identified only by a specialist *after* he left Auburn C.F. (i.e., on or about December 3, 2003, at Gouverneur Correctional Facility).  (Dkt. No. 11, ¶ 21 [Plf.'s Am. Compl.].)  As a result, it is difficult for me to imagine how Defendants in this action (who are not alleged to be specialists)

22

could have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists." *Johnson*, 412 F.3d at 403.

However, even if Defendants could have been aware of a substantial risk of serious harm (based on the facts alleged by Plaintiff), Plaintiff has alleged no facts plausibly suggesting that any Defendant in this action "disregarded" any such risk. *Id.*

Plaintiff alleges that, after he sustained his injury, he was "immediately" taken to the facility's medical clinic, where he was examined by a physician through use of a high-tech piece of video equipment.  (Dkt. No. 11, ¶ 5 [Plf.'s Am. Compl.].)  A nurse then taped Plaintiff's finger.  (*Id.* at ¶ 6.)  Then next day, he received an x-ray examination of his finger.  (*Id.* at ¶ 7.)  The x-ray examination was reviewed by several medical professionals, including a radiologist, who did not find an injury.  (*Id.*)  Over the following two months, Plaintiff was seen, according to his own allegations, six times by three different medical professionals at Auburn C.F., including a physician.  (*Id.* at ¶¶ 8-17.)  On at least one of those occasions, he was given ibuprofen.  (*Id.* at ¶ 8.)  Finally, two of the exhibits attached to Plaintiff's Amended Complaint indicate that, as of three days before Plaintiff was transferred from Auburn C.F. on September 22, 2003, he had been scheduled to be seen in the future by an orthopedic specialist.  (*Id.* at Exs. B, C.)

These factual allegations plausibly suggest only that, *at most*, some of the Defendants may have been somewhat negligent in providing him medical care.[35]  The problem, of course, is

---

[35]     *See Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F. Supp.2d 303, 312 (S.D.N.Y. 2001) (prisoner's "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention [with regard to the treatment of his broken finger], are not adequate grounds for a section 1983 claim.  These issues implicate medical judgments and, at worst, negligence amounting to medical

that "deliberate indifference describes a state of mind more blameworthy than negligence,"[36] one

that is "equivalent to criminal recklessness."[37]  There is no such criminal recklessness alleged in

Plaintiff's Amended Complaint.  As I read Plaintiff's complaints about the medical care provided

to him by Defendants in this action, I am reminded of what the Second Circuit once observed:

---

malpractice, but not the Eighth Amendment.") [citation omitted].

[36]     *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) ("[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence."); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Murphy v. Grabo*, 94-CV-1684, 1998 WL 166840, at *4 (N.D.N.Y. Apr. 9, 1998) (Pooler, J.) ("Deliberate indifference, whether evidenced by [prison] medical staff or by [prison] officials who allegedly disregard the instructions of [prison] medical staff, requires more than negligence.  .  .  .  Disagreement with prescribed treatment does not rise to the level of a constitutional claim. . . .  Additionally, negligence by physicians, even amounting to malpractice, does not become a constitutional violation merely because the plaintiff is an inmate. . . .  Thus, claims of malpractice or disagreement with treatment are not actionable under section 1983.") [citations omitted].").

[37]     *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") [internal quotation marks and citations omitted]; *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness . . . .") [citation omitted]; *cf. Farmer*, 511 U.S. at 827 ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for 'deliberate indifference' under the Eighth Amendment.").

24

> It must be remembered that the State is not constitutionally obligated, much as it may be desired by inmates, to construct a perfect plan for [medical] care that exceeds what the average reasonable person would expect or avail herself of in life outside the prison walls.  [A] correctional facility is not a health spa, but a prison in which convicted felons are incarcerated.  Common experience indicates that the great majority of prisoners would not in freedom or on parole enjoy the excellence in [medical] care which plaintiff[] understandably seeks . . . .  We are governed by the principle that the objective is not to impose upon a state prison a model system of [medical] care beyond average needs but to provide the minimum level of [medical] care required by the Constitution. . . .  The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves . . . .  The essential test is one of medical necessity and not one simply of desirability.

*Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) [internal quotations and citations omitted].

I note that a federal district court in California recently issued a decision in a case that is somewhat factually similar to the current case.  *See Hernandez v. Duc*, 06-CV-1251, 2007 U.S. Dist. LEXIS 87518 (E.D. Cal. Nov. 28, 2007).  In *Hernandez*, a prisoner injured his right ring finger while playing basketball.  *Hernandez*, 2007 U.S. Dist. LEXIS 87518, at *2.  Upon examination, *both* a "healed . . . fracture" *and* a "boutonniere deformity" were discovered.  *Id*. at *13.  The prisoner sued various prison doctors for inadequate medical care, alleging that, because the defendants failed to properly treat his finger, it "healed in a deformed manner."  *Id*. at *2.  On the defendants' motion for summary judgment, the district court dismissed the prisoner's claim, appearing to express some doubt as to whether the injury was sufficiently serious for purposes of the Eighth Amendment, but ultimately finding that, in any event, no evidence was adduced suggesting that defendants were deliberately indifferent to the prisoner's injury.  *Id*. at *22-26. Rather, the evidence established that (1) "over the course of four months, defendant . . . saw [the prisoner] four times with regard to the treatment of plaintiff's finger," and (2) defendant treated

25

the prisoner's finger by immobilizing it in a splint and cast.  *Id*. at *2, 15-16, 22-23.  The district

court found that, even assuming that the course of treatment was incorrect, it was a matter of

medical judgment, not a form of cruel and unusual punishment.  *Id*. at *25.

For all of these reasons, I recommend that, in the alternative, the Court grant Defendants'

motion to dismiss with regard to all of Plaintiff's claims against the moving Defendants.

### 3.    Qualified Immunity

Because I have concluded that adequate grounds exist warranting dismissal of Plaintiff's

Amended Complaint, I need not, and do not, address Defendants' alternative ground for

dismissal, namely, their argument that Defendants are protected from liability by the doctrine of

qualified immunity.  (Dkt. No. 25, Part 2, at 6-7 [Defs.' Mem. of Law].)

### 4.    Request for a Stay

Finally, Defendants request a stay of discovery in this action pending the issuance of a

decision with regard to their motion to dismiss, pursuant to Fed. R. Civ. P. 26(c).  (Dkt. No. 25,

Part 2, at 8-9 [Defs.' Mem. of Law].)  I deny this non-dispositive motion as moot.[38]

### C.    Failure to Serve Nurse "Jane Doe, RN #246"

Defendants' motion is made on behalf of Defendants Goord, Wright, Burge, Kooi,

Morgan, and Androsko.  (Dkt. No. 25, Part 1 [Defs.' Notice of Motion, identifying Defendant

"Morgan" as "Susan Cordileone"]; Dkt. No. 34 [Order granting Defendant Androsko's request for

leave to join in Defendants' Motion to Dismiss].)  Defendants' motion is not made on behalf of

Nurse "Jane Doe, RN #246."  This is because Plaintiff never named or served that individual.

---

[38]    For future reference, defense counsel is respectfully advised against attaching this
sort of request at the end of a motion bearing another title.

(*See generally* Docket.)

Because Plaintiff has failed to provide the Clerk's Office with documents necessary to enable the U.S. Marshals Service to effect service on Nurse "Jane Doe, RN #246," and because Plaintiff has failed to show "good cause" for that failure, Plaintiff has violated Fed. R. Civ. P. 4(m).  Alternatively, Plaintiff has violated Fed. R. Civ. P. 16(f) due to the fact that he has failed to comply with the directive of Chief Judge Mordue on December 13, 2006, to take reasonable steps to identify, and provide documentation necessary for the U.S. Marshal's Service to serve, Nurse "Jane Doe, RN #246."  (Dkt. No. 12, at 1-3.)

As a result, I recommend that the Court dismiss Plaintiff's claims against Nurse "Jane Doe, RN #246" with prejudice.  I note that the Court need not issue such an order only upon motion of defense counsel but may do so *sua sponte*.  *See* Fed. R. Civ. 4(m) ("[T]he Court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time."); Fed. R. Civ. 16(f) ("[T]he judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just . . . .").  I note also that, even if the Court were to review the sufficiency of Plaintiff's claims against Nurse "Jane Doe, RN #246," the Court would find those claims to be facially insufficient for the reasons described above in Parts III.B.1. and III.B.2. of this Report-Recommendation.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 25) be **GRANTED**, and that Plaintiff's Amended Complaint (Dkt. No. 11) be **DISMISSED with prejudice**; and it is further

**ORDERED** that Defendants' request, pursuant to Fed. R. Civ. P. 26(c), for a stay of discovery in this action pending the issuance of a decision with regard to their motion to dismiss is **DENIED** as moot; and it is further

**RECOMMENDED** that Plaintiff's claims against Nurse "Jane Doe, RN #246" be *sua sponte* **DISMISSED** **with prejudice** for failure to serve and/or failure to comply with an Order of the Court, pursuant to Fed. R. Civ. 4(m) and/or Fed. R. Civ. 16(f); and it is further

**RECOMMENDED** that the Court certify in writing that any appeal taken from the Court's final judgment in this action would not be taken in good faith, for purposes of 28 U.S.C. § 1915(a)(3).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Svcs.*, 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. § 636(b); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: February 8, 2008
        Syracuse, New York


George H. Lowe
United States Magistrate Judge